UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

STEVEN MARSHALL I.D.#95-A-8248,

                            Plaintiff,

            -against-

ANTHONY J. ANNUCCI, Acting Commissioner for
the ("NYSDOCCS"), JAMES A. FERRO, Director
of Operations ("O.S.I."), VERNON FONDA,
Chief of Operations ("O.S.I."), PATRICK
GRIFFIN, Former Assistant Deputy
Commissioner for Correctional Facilities,
THOMAS GRIFFIN, Former Superintendent for
Green Haven Correctional Facility,
THOMAS WILKINS, Former Deputy Superintendent
for Security, THOMAS MELVILLE, Corrections
Captain, SHAWN J. MURPHY, Corrections
Lieutenant, WILLIAM J. PRIMLEY, Corrections
Lieutenant, ROBERT JOHANEMEN, Corrections
Sergeant, JOSEPH C. GARCIA, Corrections
Officer, THOMAS A. GERMANO JR., Corrections
Officer, WARREN C. FREEMAN, Corrections
Officer,

                            Defendants.

------------------------------------------------X

**18CV6673**

**Prisoners'
Civil Rights
Complaint Under
42 U.S.C. §§ 1983,
1985 & 1988**

_____CV_____

**Jury Trial Demand**

## I. Prisoners' Civil Rights Complaint:

STEVEN MARSHALL, for his pro se Complaint alleges as

follow(s):

1. This is a pro se prisoners Civil Rights complaint, under

42 U.S.C. §§ 1983, 1985 and 1988; to recover compensatory and

punitive damages, declaratory and injunctive relief, for the

deprivation of Plaintiff's rights as secured by the United States

Constitution.

## III. Jurisdiction And Venue:

2. This action arises under 42 U.S.C. §§ 1983, 1985 and

2018 JUL 24 PM 1:37 RECEIVED SDNY DOCKET UNIT

(1).

- 1988. As well as under the newly enacted " **'Prison Rape Elimination Act("P.R.E.A")'** " under 42 U.S.C.A. §§ 15601 - 15609 et seq.

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 as well.

PARTIES:

5. Plaintiff, Steven Marshall ("Plaintiff or Marshall"), was at all times relevant and mentioned within this pro se Complaint, being held and/or confined at Green Haven Correctional Facility (**"Green Haven C.F."**), located at 594 Route 216, Stormville, New York 12582-0010 upon, which, is within the United States District Court, Southern District of New York. Plaintiff Marshall is currently being held and/or confined at Eastern New York Correctional Facility (**"Eastern NYCF"**), located at 30 Institutional Road, P.O. Box 338, Napanoch, New york 12458-0338.

6. Defendant, Anthony J. Annucci ("Annucci"), was at all times relevant and mentioned within this pro se Complaint, employed as Acting Commissioner for the New York State, Department of Corrections and Community Supervision ("NYSDOCCS"), located at Harriman State Office Campus Bldg. No.#2, 1220 Washington Avenue, Albany, New York 12224. He is being sued within his individual and official capacities.

7. Defendant, James A. Ferro ("Ferro"), was at all times relevant and mentioned within this Complaint, employed as a Director of Operations, for the Office of Special Investigations

- ("O.S.I.")("formally known as the **Inspector Generals Office
and/or I.G.**") for the NYSDOCCS, located at Harriman State Office
Campus Bldg. No.#2, 1220 Washington Avenue, Albany, New York
12224. He is being sued within his individual and official
capacities.

8. Defendant, Vernon Fonda ("Fonda"), was at all times
relevant and mentioned within this Complaint, employed as Chief
of Operations for the Office of Special Investigations
("O.S.I."), located at Harriman State Office Campus Bldg. No.#2,
1220 Washington Avenue, Albany, New York 12224. He is being sued
within his individual and official capacities.

9. Defendant, Patrick Griffin ("P. Griffin"), was at all
times relevant and mentioned within this Complaint, employed as a
Former Assistant Deputy Commissioner for Correctional Facilities,
located at Harriman State Office Campus Bldg. No.#2, 1220
Washington Avenue, Albany, New York 12224. He is being sued
within his individual capacity.

10. Defendant, Thomas Griffin ("T. Griffin"), was at all
times relevant and mentioned within this Complaint, employed as
Former Superintendent and Chief Executive Administrative Officer
at Green Haven C.F., who is located at the NYSDOOCS, Harriman
State Office Campus Bldg. No.#2, 1220 Washington Avenue, Albany,
New York 12224. He is being sued within his individual and
official capacities.

11. Defendant, Donald Wilkins ("Wilkins"), was at all times

relevant and mentioned within this Complaint, employed as an Former Deputy Superintendent of Security at Green Haven C.F. He is being sued within his individual capacity.

12. Defendant, Thomas Melville ("Melville"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Captain at Green Haven C.F., located at 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

13. Defendant, Shawn J. Murphy ("Murphy"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Lieutenant at Green Haven C.F., located at 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

14. Defendant, William J. Primley ("Primley"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Lieutenant at Green Haven C.F., located at 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

15. Defendant, Robert Johanemen ("Johanemen"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Sergeant at Green Haven C.F., located at 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

16. Defendant, Joseph C. Garcia ("Garcia"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Officer at Green Haven C.F. located at 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

17. Defendant, Thomas A. Germano Jr., ("Germano"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Officer, at Green Haven C.F., 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

18. Defendant, Warren C. Freeman ("Freeman"), was at all times relevant and mentioned within this Complaint, employed as a Corrections Officer, at Green Haven C.F., 594 Route 216, Stormville, New York 12582. He is being sued within his individual capacity.

19. All Defendants, have acted and continued to act under Color of New York State law.

### IV. Exhaustion Of Administrative Remedies:

20. Plaintiff Marshall has exhausted his available administrative remedies.

### V. Allegations Common To All Causes Of Action:

21. The plaintiff incorporates by reference paragraph(s) 1 through 20.

22. On or about April 25, 2016; at approximately 8:40 a.m., Plaintiff Marshall, was without need, provocation or penological justification, viciously attacked, maliciously and sadistically physically assaulted and sexually abuse by Defendants Garcia and Germano for, use of Plaintiff's protected legal activities at Green Haven C.F.

23. Plaintiff Marshall had just returned along with several

other inmates/prisoners back from the facility's Messhall without
incident.

24. As the Plaintiff Marshall attempted to enter his
assigned housing block " 'E-Block' " he was stopped at the
entrance door by defendant Garcia.

26. Garcia directed Marshall to stand inside the block on
the lower level flats (sic) area and plaintiff complied.

27. Defendant Germano than existed the housing block's " 'A-
Post Station' " in which is a caged encapsulated area as the
block's " 'A-Officer' " at the same time.

28. As plaintiff Marshall awaited further directions,
several other inmates/prisoners, entered the block returning from
receiving their " 'AM' " prescribed medications as well.

29. Afterwards, defendant Garcia, then suspiciously, walked
up several steps, towards the second floor, as if to make sure
that no inmates were around.

30. Defendant Garcia then came back down the steps and gave
defendant Germano what looked like a knowing nod ok with his head
and directed Marshall to place his hands on the wall and the
plaintiff complied again.

31. Defendant Garcia than removed Marshall's religious
" 'Rastafarin Head' " covering off of his head and took
everything out of plaintiff's pockets.

32. Plaintiff sensing danger, nonetheless stood motionless,
and continued to stand their after he had already by then

(6).

placed his hands onto the wall directly infront of the officers " 'A-Post Station' " area without questioning as to why.

33. Then without warning a plastic type bag was immediately placed over the plaintiff Marshall's head from behind.

34. Afterwards, defendant Garcia, then grabbed the plaintiff Marshall from behind and placed the plaintiff into what seem like a brutal one arm type " 'Choke Hold' " with the plaintiff's right arm caught in the middle as well.

35. The plaintiff Marshall immediately with his one remaining free hand, attempted to rip the plastic type bag off of his head, while struggling to break free of defendant Garcia's unprovoked brutal choke hold at the exact same time and trying to plead for help.

36. However the defendant Germano immediately appeared from the plaintiff Marshall right side, and prevented the plaintiff from ripping the plastic type bag off of Marshall's head as well.

37. Defendant Garcia, then began whispering into the plaintiff's left ear stating in substance. " '[Y]ou like filing lawsuits and grievances against staff motherfucker, (sic) you think that you are a smart ass nigger motherfucker' " (sic) as Garcia applied even more pressure to Marshall's neck and right arm caught within the one arm type of choke hold squeezing down even harder onto Marshall's neck and right arm still caught in the middle of Garcia's choke hold while ignoring plaintiff's cries that he could not breathe as well.

(7).

38. The plaintiff Marshall struggling to breathe and fighting with defendant Germano over the plastic bag tried to speak, but could not because of the pressure being applied to his neck by defendant Garcia brutal chok hold from behind thee entire time.

39. The defendant Garcia then called the plaintiff Marshall a wanna be " 'Sand Nigger' " as a racial slur in which the plaintiff would later learn afterwards from an inmate/prisoner and a former " 'Iraqi War Veteran' " was allegedly a racial slur that was used towards individuals of the " 'Muslim Islamic Religious Faith' " by some during the Iraq Desert Storm War.

40. Then the last words that the plaintiff Marshall heard defendant Garcia say to him was in substance. " '[Y]ou think that your a smart ass nigger (sic) don't you motherfucher' " as Marshall was then rendered completely unconscious and defenseless by defendant Garcia's brutal " 'Choke Hold' " with the assistance of defendant Germano as well.

41. The entire time the plaintiff Marshall truly believed that defendant(s) Garcia and Germano were actually going to kill the plaintiff.

42. The next thing in which the plaintiff Marshall heard was defendant Garcia voice in a threaten tone of voice telling Marshall. " '[G]et up off the floor motherfucker (sic) as he awoke to Garcia towering over him lying on the floor with Garcia's " 'Baton' " out and within Garcia's hands as well.

43. As the plaintiff Marshall began to stand to get up off

(8).

the floor, the plaintiff immediately notice that defendant Germano and two other unidentified officer(s) were also standing around him with their " 'Batons' " out and within their hands as well.

44. It was then when the plaintiff Marshall felt a (foreign object) lodged between his buttocks and partially inside the plaintiff (anal) area.

45. The plaintiff Marshall then immediately reached within the back his of pants and underwear, and removed plaintiff's " 'Religious Head' " covering out of plaintiff's (anal) area.

46. At which point defendant(s) Garcia and Germano, along with the other two yet to be identified officer(s) bursted out in a loud (laughing) manner upon seeing the plaintiff remove his " 'Religious Head' " covering out of Marshall's own (anal) area.

47. It was right then when defendant Germano looked to defendant Garcia and said in a joking accusatory manner in substance. " '[Y]ou are a sick puppy' " with a smirk on Germano's face to defendant Garcia as they all again bursted out in laughter at Marshall standing there with his " 'Religious Head' " covering within plaintiff's hand as well.

48. The plaintiff Marshall finally realized that he had also been maliciously and sadistically " 'Sexually Abused' " by the defendant Garcia with plaintiff's own " 'Religious Head' " covering infront of defendant Germano and the other two officer(s) who simply stood by and watched Garcia sexually abused Marshall with his own religious head covering at Green Haven C.F.

(9).

49. The plaintiff Marshall in disbelief, could do nothing, except stand there with tears running down his face motionless and speechless, after realizing that defendant Garcia had " 'Sexually Abused' " the plaintiff as well.

50. The plaintiff Marshall also discovered that his then medically issued " 'Adult Depend' " (sic) had been ripped off of his body by defendant Garcia and was lying on the floor next to the officers caged area.

51. Defendant Garcia then with a callous and indifferent attitude then stated to the plaintiff Marshall in substance. " '[P]ick-up your fucking pamper and Muslim hubcap an go up stairs and lock the fuck (sic) in asshole' " (sic) referring to Marshall's then " 'Rastafarian Religious Head' " covering in which closely resemble a Muslim religious head covering as well.

52. The plaintiff Marshall advised defendant Garcia that he was not of the " 'Muslim Faith' " but a registered member of the " 'Rastafarian Religious Faith' " as mistakenly believed by defendant Garcia at the time.

53. On or about April 25, 2016; the plaintiff Marshall was registered as a member of the " 'Rastafarian Religious Faith' " at Green Haven C.F.

54. The plaintiff Marshall currently remains a registered members of the " 'Rastafarian Religious Faith' " at the filing of the instant comlaint.

55. Defendant Garcia continued to act with a complete callous

(10).

and indifference attitude towards the plaintiff Marshall advising
the plaintiff furthermore in substance. " '[I] don't give a shit
(sic) what the fuck (sic) you are, I said take your fuckering shit
(sic) and lock the fuck (sic) in motherfucker (sic) as well.

56. Then after the plaintiff Marshall gather all of his
things together and began walking up the stairs to his assigned
housing company, defendant Garica the (threaten) the plaintiff
stating in substance. " '[I] better not fucking hear that you
filed any fuckering (sic) grievance about this either asshole!' "

57. Prior to the date of April 25, 2016; the plaintiff
Marshall had filed a number of facility " 'Inmate Grievance
Complaint(s)' " challenging to condition(s) of his confinement
upon, which, includes, but is not limited to grievance(s)
involving retaliation, harassment, threats and abuse of authority
by facility security staff at Green Haven C.F.

58. Prior to the date of April 25, 2016; the plaintiff
Marshall had filed a pro se " 'Prisoners Civil Rights Complaint' "
within the United States District Court, Western District of New
York, against various employee(s) for the NYSDOCCS, while at Green
Haven C.F.

59. Prior to the date of April 25, 2016; the plaintiff
Marshall had experienced some difficulty to filing his pro se "
'Prisoners Civil Rights Complaint' " against various employee(s)
for the NYSDOCCS, due in part to acts and/or omissions of the
facility's " 'Correspondence Department and Business Office' " as
grieved by the plaintiff as well at Green Haven C.F.

(11).

60. The plaintiff Marshall with a feeling of completely humiliation walked away and down his housing company with tears running down his face.

61. Marshall fearful for his immediate safety and well being did not initially report the incident of excessive force and sexual abuse at the hands of defendants Garcia and Germano to any employee for the NYSDOCCS at Green Haven C.F.

62. The plaintiff however had written directly to the then " 'President of United States Barack Obama' " and the current New York State, United States Senator(s) to report that he had endure excessive force and sexual abuse at the hands of defendants Garcia and Germano while at Green Haven C.F.

63. On or about September 18, 2016, received a letter response to his letter to then President Obama directly from the " 'United States Department of Justice, Criminal Section, Civil Rights Division' " inquiring as to the facts and circumstances surrounding the incident of excessive force and sexual abuse at the hands of defendants Garcia and Germano at Green Haven C.F.

64. The plaintiff incorporates by reference paragrsph(s) 1 through 63.

65. On or about April 26, 2016; at approximately 5:00 p.m., the plaintiff Marshall while within his assigned cell " 'E-2-Company, 214-Cell' " was confronted unbeknownst to the plaintiff by defendant Freeman with regards to the incident of " 'Excessive

- **Force** and **Sexual Abuse'** " as perpetrated by defendants Garcia and Germano at Green Haven C.F.

66. The defendant Freeman approached the plaintiff Marshall's cell bars and directed the plaintiff to come over towards the front of the cell bars gate.

67. The plaintiff Marshall complied with the directions of defendant Freeman by walking over to his cell bars gate.

68. Once the plaintiff reached the front of his cell bars gate, defendant Freeman quickly reached through the cell bars and punched Marshall directly in the mouth through the cell bars, bursting the plaintiff's bottom lip, and drawing blood in the plaintiff's mouth before threatening the plaintiff stating in substance. " '[O]pen your fuckering (sic) mouth and your dead motherfucker! Did you hear what I said asshole?!' "

69. The plaintiff Marshall was certain that defendant Freeman had (threaten) him to prevent Marshall from reporting the incident involving the Marshall and defendants Garcia and Germano the day before within E-Block at Green Haven C.F.

70. Up until that day the plaintiff Marshall never had any prior problems and/or contact with defendant Freeman whatsoever at Green Haven C.F.

71. The plaintiff Marshall fearful for his immediate safety and well being did not immediately report that he had been threatened and assaulted by defendant Freeman at Green Haven C.F.

72. Marshall soon thereafter would learn that defendant(s)

(13).

Garcia, Germano and Freeman were all a part of the facility's
" 'Beat Down Squad' " as then known to the entire
inmates/prisoners population for (terrorizing) and (savagely
attacking) inmates/prisoners throughout the facility without fear
of impunity. Often as retaliation for petitioning both ...
administrative and judicial forms for redress of their grievances
against a State officer or challenging the conditions of their
confinement while acting under Color of New York State law at
Green Haven C.F.

73. Afterwards defendant Freeman then simply walked away down
the company from the plaintiff's cell bars gate at Green Haven
C.F.

74. The plaintiff incorporates by reference paragraph(s) 1
through 70.

75. On or about May 4, 2016; the plaintiff Marshall met with
his facility's designated " 'Mental Health Therapist' " as part of
plaintiff's continued receipt of Out patient mental health
psychiatric service for bouts of depression and anxiety to address
plaintiff's serious mental health medical needs at Green Haven
C.F.

76. It was at such time when the plaintiff Marshall advised
his Mental Health Therapist of the incident between Marshall and
defendants Garcia and Germano on or about April 25, 2016 at Green
Haven C.F.

77. In response the plaintiff Marshall's Mental Health

(14).

Therapist immediately notified the facility's security staff
personnel of the plaintiff Marshall's allegations that he had been
subjected to excessive force, and sexual abused at the hands of
defendants Garcia and Germano at Green Haven C.F.

78. The plaintiff Marshall was then immediately taken by
security escorted by the area then supervising Corrections
Sergeant ("Sgt."), and several Correction Officer(s) over to the
facility's Medical Department/Clinic for an examined and interview
under NYSDOCCS, newly enacted " 'Prison Rape Elimination Act' "
("P.R.E.A") common customs, practices, policies and procedures at
Green Haven C.F.

79. At the exact moment when the plaintiff Marshall met with
one of several facility Medical Doctors ("M.D.") and a nursing
staff member, his then security personnel escort(s) refuse to
leave the examination room, and literally stood within ear shot
and less than approximately three feet away from Marshall and
medical personnel at Green Haven C.F.

80. As a result the plaintiff Marshall who was still fearful
for his immediate safety and well being was reluctant in giving
medical personnel a full account of the excessive force and sexual
abuse incident in which he was made to endure at the hands of
defendants Garcia and Germano at Green Haven C.F.

81. However the plaintiff Marshall did infact acknowledge to
the " 'M.D.' " that the plaintiff had met with that Marshall was
infact sexually abused at the hands of defendants Garcia and

(15).

Germano at Green Haven C.F.

82. At which point the " 'M.D.' " sensing that the plaintiff
Marshall was infact reluctant and uncomfortable in discussing the
details of the incident of excessive force and sexual abuse at the
hands of defendants Garcia and Germano in substance advising the
plaintiff that the " 'M.D.' " would schedule Marshall for an
appointment with his then facility's designated Primary Care
Provider ("P.C.P") as a post " 'P.R.E.A' " follow-up encounter to
allow plaintiff to report any and all alleged injuries and/or
damages with regards to his alleged incident of excessive force
and sexual abuse by Garcia and Germano at Green Haven C.F.

83. Afterwards the plaintiff Marshall was placed on an
unlawful and excessive retaliatory " '72 Hour Keeplock' "
confinement period within his assigned cell.

84. On or about May 5, 2016; the plaintiff Marshall wrote
directly to defendant Wilkins contesting his unlawful and
excessive retaliatory " '72 Hour Keeplock' " confinement period
for simply reporting in good-faith that the plaintiff had
allegedly suffered excessive force and sexual abuse at the hands
of defendants Garcia and Germano at Green Haven C.F.

85. On or about May 6, 2016; the very next day the plaintiff
Marshall was forced as retaliation for writing and complaining to
defendant Wilkins the day before contesting his unlawful and
excessive retaliatory " '72 Hour Keeplock' " confinement period by
defendant Primley as a Corrections Lieutenant ("Lt.") to return

(16).

back to the facility's Medical Department (sic) to charge the
plaintiff's signed and sated brief statement given to facility
medical staff member(s) that Marshall had been subjected to an
unprovoked acts of excessive force and sexual abuse at the hands
of defendants Gacria, Germano and Freeman as well. In the
furtherance of a conspiracy between defendants P. Griffin, T.
Griffin, Wilkins, Melville and Primley to help (maintain) the
level of excessive force and abuse being used by their
subordinates to punish and control inmates/prisoners such as the
plaintiff Marshall while acting under Color of New York State law
at Green Haven C.F.

86. The defendant Primley (sic) would then go on to (coerced)
the plaintiff Marshall into changing his brief statement as given
to facility medical staff over to that the incident between he and
defendants Garcia and Germano were simply just an alleged " 'Pat
Frisk' " that went wrong at Green Haven C.F.

87. After the plaintiff Marshall had first witnessed and
heard defendant Primley attempted to (coerced) the initial male
" 'M.D.' " who the plaintiff first spoke with about his
" 'P.R.E.A' " complaint to charge his medical reports as well. In
the furtherance of the conspiracy between defendants P. Griffin,
T. Griffin, Wilkins, Melville and Primely as well.

88. However the male " 'M.D.' " refused to given into
defendant Primley's demand to change his medical reports. In the
furtherance of the conspiracy between defendants P. Griffin, T.

(17).

- Griffin, Wilkins, Melville and Primley to help (**mainatin**) the level of excessive force and abuse by their subordinates to punish and control the inmates/prisoners population at Green Haven C.F.

89. While the defendant P. Griffin (sic) would repeatedly protect defendant T. Griffin because of (**nepotism**) from facing any type of scrutiny or impunity for maintaining the level of violence and/or abuse through subordinate " **'Beat Down Squads'** " to punish and control the inmates/prisoners population. In the furtherance of the conspiracy between defendants P. Griffin, T. Griffin, Wilkins, Melville and Primely at Green Haven C.F.

90. The plaintiff Marshall fearful for his immediate safety and well being would give in to the (**coercion**) from defendant Primley and change his brief written statement provided to the facility's medical staff in regards to Marshall first reported " **'P.R.E.A'** " incident at Green Haven C.F.

91. Afterwards the plaintiff Marshall would than finally be released out his retaliatory " **'72 Hour'** " keeplock confinement period as well.

92. On or about May 11, 2016; the plaintiff Marshall underwent an facility's " **'X-Ray'** " of his rights shoulder in which would revealed that the plaintiff suffered a severe " **'Rights Shoulder Impingment'** " after being subjected to excessive force and sexual abuse at the hands of defendants Garcia and Germano at Green Haven C.F.

93. On or about May 11, 2016; the plaintiff Marshall would be placed back on to " **'72 Hour'** " keeplock confinement period after

(18).

after Marshall refused to return back once again to the facility's
Medical Department/Clinic for a [t]hird time to change his signed
statement of 5/6/16 as well at Green Haven C.F.

94. On or about May 12, 2016; the plaintiff Marshall
submitted a formal Inmate Grievance Complaint against defendants
Garcia, Germano and Freeman for acting in concert with, in
conspiring with, and aiding and abetting one another and others
for whose acts they are liable, to punish Marshall for his
protected legal activities challenging the conditions of his
confinement while under the exclusive care, custody and control
of the NYSDOCCS upon, which, includes, but not limited to
excessive force and sexual abuse as logged and filed by the
facility's Inmate Grievance Program ("IGP") office under Complaint
No.#(GH-83023-16, **Class Code No.#[I/49]**) at Green Haven C.F.

95. Afterwards the plaintiff Marshall continued to suffer
even more egregious and continuous acts of retaliation, harassment
and abuse at the hands of other facility security staff personnel
acting in concert within in conspiring with, and aiding and
abetting one another and others for whose acts they are liable
with defendants Garcia, Germano and Freeman as punishment for the
plaintiff protected legal activities upon, which, includes, but is
not limited to the repeated denial of plaintiff's " **'Medical
Showers'** " as well at Green Haven C.F.

96. On or about May 17, 2016; at approximately 8:00 a.m., the
plaintiff Marshall was conforted by defendant Gacria and

(19).

another C.O. as the plaintiff attempted to exist his assigned housing block for a facility's mandatory callout appointment and threaten the plaintiff promising to get even with Marshall in retaliation for his grievances against defendants Garcia, Germano and Freeman at Green Haven C.F.

97. On or about June 1, 2016; defendant Garcia and another housing block officer within " 'E-Housing Block' " comforted the plaintiff Marshall and subjected the plaintiff to an abusive " 'Strip Search' " stripping the plaintiff down to his underwear and socks out of the presence of an area supervisor. In violation of " 'Strip Search' " common customs, practices, policies and procedures for the NYSDOCCS, after the plaintiff returned to his housing block from receiving his " 'AM' " mourning mental health and medical prescribed medication(s) in retaliation for Marshall's grievances against defendants Garcia, Germano and Freeman at Green Haven C.F.

98. Marshall also continued to be harassed and denied of his minimum standards and provisions upon, which, includes, but is not limited to the denial of access to plaintiff's medically approved housing block " 'Medical Shower' " daily, along with the denial of access to plaintiff's scheduled mandatory medical appointments with his designated facility's " 'P.C.P' " to address his numerous ongoing serious medical needs at Green Haven C.F.

99. The plaintiff incorporates by reference paragraph(s) 1 through 98.

100. On or about June 14, 2016; at approximately 5:30 p.m.,
the plaintiff Marshall was subjected to the first of several
improper interviewed as conducted by defendant Melville the
facility's Corrections Captain and allegedly an designated "
'P.R.E.A' " compliance officers at Green Haven C.F.

101. The entire first of several improper alleged " 'P.R.E.A'
" interview(s) as conducted by defendant Melville took place
inside of the very same housing block where the plaintiff was
subjected to excessive force and sexual abuse at the hands of
defendants Garcia and Germanon within direct ear shot of several
of the plaintiff's regularly assigned housing block officer(s) as
well.

102. According to the defendant Melville he was the
facility's a designated " 'P.R.E.A' " compliance Corrections
Captain officer at Green Haven C.F.

103. The defendant Melville further advised the plaintiff
Marshall that Melville was allegedly required to meet with the
plaintiff atleast once a month for an entire year. In order to
ascertain as to whether or not Marshall was also a (victim)
egregious acts of harassment, retaliation and abuse by any
facility security staff member(s) for reporting in good-faith the
initial incident of excessive force and sexual abuse at the hands
of defendants Garcia and Germano at Green Haven C.F.

104. However the plaintiff Marshall felt completely
uncomfortable about being made to speak with defendant Melville

out in the open and infront of several of Melville's subordinate
security staff member(s) working within Marshall's then assigned
housing block where the initial incident(s) of excessive force and
sexual abuse at the hands of defendants Garcia and Germano
actually took place " 'E-Block' " at Green Haven C.F.

105. On or about June 14, 2016; the plaintiff Marshall
personally complained directly to defendant Melville and advised
Melville as too such continuous egregious acts of harassment,
retaliation and abuse in which Marshall were being made to endure
within his assigned housing area " 'E-Block' " at Green Haven C.F.

106. Afterwards the plaintiff Marshall continued to suffer
continuous and repeated egregious acts of harassment, retaliation
and abuse even after reporting such acts of employees malfeasance
to defendant Melville within plaintiff's assigned housing area "
'E-Block' " where the initial incidents of excessive force and
sexual abuse at the hands of defendants Garcia and Germano at
Green Haven C.F.

107. On or about July 6, 2016; the plaintiff Marshall was not
allowed out of his cell to attend his mandatory facility's medical
appointment callout with the plaintiff's designated facility's "
'P.C.P' " as scheduled for the time period of approximately 8:30
a.m. to address his serious medical needs as retaliation for the
plaintiff's grievances on defendants Garcia, Germano and Freeman
at Green Haven C.F.

108. On or about July 7, 2016; the plaintiff Marshall

via a " 'Sick-Call Request' " screening encounter reported the
complete refusal of security member(s) from within his assigned
housing area " 'E-Block' " to allow the plaintiff to simply attend
his mandatory medical appointment with plaintiff's primary care
provider to address Marshall ongoing serious medical needs as part
of concerted campaign and pattern of harassment, retaliation and
abuse seeking another medical appointment with his facility's
primary care provider at Green Haven C.F.

109. On or about July 11, 2016; defendant Melville again saw
and spoke with the plaintiff Marshall out in the open and infront
of several of Melville's subordinate security staff member(s)
working within Marshall's assigned housing area " 'E-Block' "
where the initial incidents of retaliation, excessive force and
sexual abuse at the hands of defendants Garcia and Germano, plus
an additional incident of threats and unprovoked assault by
defendant Freeman all took place. In deliberate indifference to
the plaintiff's immediate safety and well being at Green Haven
C.F.

110. As a result of the foreseeable acts and omissions of
defendant Melville of repeatedly interviewing the plaintiff
Marshall out in the open and infront of a numerous subordinate
security staff member(s) of Melville in connection with the
plaintiff's initial reports of retaliation, excessive force and
sexual abuse at the hands of defendants Garcia and Germano, plus
an incident of retaliatory threats and assault by defendant

(23).

Freeman acting in concert with, in conspiring with, and aiding and abetting one another and others for whose acts they are liable, Marshall was made to endure a campaign of continuous harassment, retaliation, abuse and threats as a daily occurrence throughout Green Haven C.F.

111. The plaintiff incorporates by reference paragraph(s) 1 through 110.

112. On or about July 13, 2016; at approximately 9:30 a.m., the plaintiff Marshall was finally removed out of his initial assigned housing block area " 'E-Block' " and sent to the other side of the facility to " 'A-Block' " within Green Haven C.F.

113. Upon the plaintiff Marshall's immediate arrival at his newly assigned housing area " 'A-Block' " the plaintiff found himself immediately greeted by unprovoked egregious acts of harassment and retaliation by several of the housing block's regular assigned security staff member(s) upon who attempted to enforce an unofficial and harassing inmate/prisoner personal property rule as one of several common customs, practices, policies and procedures of subordinate security staff member(s) at Green Haven C.F.

114. The plaintiff Marshall contesting such egregious acts of harassment and retaliation was then thereafter threaten by defendant Johanemen a then immediate area supervising Corrections Sergeant ("Sgt.") with serious physical bodily harm and the receipt of a false Misbehavior report for refusing to comply with

their unofficial inmate/prisoner personal property rule as
promulgated and enforced by lower level security staff member(s)
without fear of impunity at Green Haven C.F.

115. The plaintiff Marshall experiencing a number of
diagnosed psychological and emotion distress injuries upon, which,
includes, but is not limited by a diagnosis of " 'Post Traumatic
Stress Disorder' " ("P.T.S.D") after enduring an unprovoked acts
of harassment, retaliation, excessive force and sexual abuse at
the hands of defendants Garcia, Germano and Freeman had an
immediate " Panic Attack' " after being threatened by defendant
Johanemen at Green Haven C.F.

116. At which time the plaintiff Marshall was then placed
within mechanical restraints by defendant Johanemen and escorted
over to the facility's " 'Psychiatric Services Unit' " ("PSU")
admitted and held on " '1 on 1' " mental health observation for in
over approximately one full week until the date of 7/22/16 at
Green Haven C.F.

117. On or about July 22, 2016; the plaintiff Marshall
submitted a type written grievance complaining that he was being
made to endure continuous egregious acts of retaliation and
harassment at the hands of numerous facility security staff
member(s) upon, which, includes, but not limited to threats by
defendant Johanemen as retribution for the plaintiff's good-faith
reporting that he endured egregious acts of retaliation,
unprovoked excessive force and sexual abuse at the hands of

(25).

defendants Garcia and Germano, plus threats and also unprovoked
excessive force by defendant Freeman acting in concert with, in
conspiring with, and aiding and abetting one another and others
for whose acts they are liable, while confined at Green Haven C.F.

118. The plaintiff Marshall also complained that he had been
denied access to his facility's designated medical primary care
provider as retribution for his (protected legal activities) at
Green Haven C.F.

119. As well as noting that an attempt was made by
unidentified security staff member(s) to lure the plaintiff
Marshall out of his then assigned cell " 'E-2-211 Cell' " late one
evening at approximately 9:00 p.m. under the <u>false pretence</u> that
the plaintiff allegedly had an evening medical callout.

120. At which time the plaintiff Marshall refused to leave
his cell to attend as by then Marshall was well aware that it was
more then likely just one of many tricks used by security staff
member(s) to get an inmate/prisoner that they wish to retaliate
against with excessive force/savage beatings alone and out of the
eyes and ears of any possible witnesses at Green Haven C.F.

121. The plaintiff Marshall also reported that his newly
assigned cell " 'A-2, 211 Cell' " had a broken/cracked sink in
which leaked water onto his cell floor daily as well.

122. On or about July 22, 2016; the plaintiff Marshall
reported his broken/cracked in cell sink to his then even 3 to 11
shift regular " 'A-Post Officer' " in addition to signing his name

(26).

and cell location onto the housing units then established
" 'Plumbing List' " earlier in the afternoon as one of several
common customs, practices, policies and procedures available to
the inmate/prisoner general population at Green Haven C.F.

123. On or about August 26, 2016; the plaintiff Marshall also
complained directly to defendant Melville advising him as to the
continuous egregious acts of harassment, retaliation and abuse in
which the plaintiff was made to endure at the hands of numerous
facility security staff member(s) and subordinates of defendant
Melville's daily. As retribution for Marshall's grievances
challenging the conditions of his confinement upon, which,
includes, but is not limited to reports of excessive force and
sexual abuse at the hands of defendants Garcia, Germano and
Freeman at Green Haven C.F.

124. The plaintiff Marshall further advised defendant
Melville as to the plaintiff broken/cracked leaking in cell sink.
As the defendant Melville stood cell side at Marshall's newly
assigned cell " 'A-2-211 Cell' " taking note of the conditions of
plaintiff's broken/cracked leaky sink upon, which, leaked large
amounts of water onto the plaintiff's entire cell floor day and
night to absolutely no avail whatsoever as well.

125. The plaintiff Marshall was forced to remained housed
and/or confined within his newly assigned cell " 'A-2, 211 Cell' "
with its broken/cracked leaky sink for several months despite
raising both formal and informal complaint(s) direct with the

(27).

defendant Melville as to the same at Green Haven C.F.

126. The plaintiff Marshall's repeated verbal and written complaint(s) made directly to the defendant Melville concerning such continuous and egregious acts of harassment, retaliation and abuse by Melville's many subordinate facility security staff member(s) as retribution for Marshall grievances challenging the conditions of his confinement fell on deaf ears as defendant Melville would take absolutely no action to prevent and/or correct the plaintiff's unconstitutional conditions of his general population confinement. In deliberate indifference to the plaintiff's immediate health, safety and well being while confined at Green Haven C.F.

127. As the plaintiff Marshall would continued to endure repeated egregious acts of retaliation, harassment and abuse at the hands of security staff member(s) as retribution for his (protected legal activities) upon, which, includes, but is not limited to the receipt of false and retaliatory Misbehavior reports at Green Haven C.F.

128. The plaintiff Marshall would continued to raise both formal and informal grievance complaint(s) challenging such egregious acts of harassment, retaliation and abuse, and the unconstitutional conditions of his prison confinement while confined at Green Haven C.F.

129. The plaintiff incorporates by reference paragraph(s) 1 through 128.

130. On or about October 13, 2016; the plaintiff Marshall was moved back to his former assigned housing area " 'E-Block' " where the initial egregious acts of retaliation, harassment and sexual abuse took place as perpetrated by defendants Garcia, Germano and Freeman as retribution for plaintiff's (**protected legal activities**) complaining of such other further egregious acts of retaliation, harassment and abuse by security staff member(s) within his last housing area " 'A-Block' " as well at Green Haven C.F.

131. The plaintiff Marshall was directed by defendant Germano as the housing block's " 'A-Post Officer' " in charge of the overall supervision, operations and management of the block to lock into his new cell " 'E-1-108' " without being afforded any cleaning supplies to clean the cell prior to taking up occupancy therein as well.

132. The plaintiff's entire cell walls, floor and ceiling were completely covered in a black construction type of soot, and littered with trash and other debris.

133. The plaintiff Marshall's newly assigned cell within " 'E-Block' " was then located directly next door to the housing block's inmate/prisoner " 'Shower Stalls' " on the lower level tier upon, which, had just recently undergone a complete renovation at Green Haven C.F.

134. On or about October 17, 2016; the plaintiff Marshall submitted a detailed written complaint directly to defendant

(29).

Melville complaining of his retaliatory move back over to the very same housing block " 'E-Block' " where the initial egregious acts of retaliation, harassment and sexual abuse took place at the hands of defendants Garcia, Germano and Freeman as well as to the conditions of the plaintiff's new cell confinement through the facility's internal mailing system. As one of then several common customs, practices, policies and procedures available to inmates/prisoners confined within the facility's general population at Green Haven C.F.

135. On or about October 18, 2016; the plaintiff Marshall also submitted a detailed written complaint directly to defendant Wilkins complaining of the plaintiff's retaliatory move back over to " 'E-Block' " as well as the conditions of plaintiff's new housing confinement cell through the facility's then internal mailing system as well.

136. At the time the plaintiff Marshall was being held and confined upon a retaliatory period of wrongful and excessive pre-hearing confinement based upon a false, and retaliatory Misbehavior report as retribution by defendant Murphy for the plaintiff's (**protected legal activities**) upon, which, includes, but not limited to a formal grievance complaint filed against Murphy (sic) the plaintiff's then assigned Hearing Officer ("H.O.") with regards to the second of [t]wo false and retaliatory Misbehavior reports at Green Haven C.F.

137. On or about October 21, 2016; the plaintiff Marshall was

(30).

out of " 'E-Block' " after first suffering a severe " 'Panic
Attack' " while locked inside of his housing tier shower stall for
more then in over approximately one hour by a female security
staff member identified as the biological sister of the defendant
Germano. As retribution for the plaintiff's reports of excessive
force and sexual abuse at the hands of Gacria, Germano and Freeman
at Green Haven C.F.

138. On or about October 28, 2016; the facility's Inmate
Grievance Program ("I.G.P") office logged and filed one of
numerous inmate grievance complaint(s) from the plaintiff
complaining of such egregious acts of retaliation, harassment and
abuse at the hands of facility security staff member(s) upon,
which, includes, but is not limited to complaining of the repeated
denial of his medical approved " 'Medical Showers' " as well as
plaintiff's retaliatory cell move back into " 'E-Block' " and
continued wrongful and excessive " 'Pre-Hearing Confinement' " on
a Tier II Misbehavior report as perpetrated by the defendant
Murphy for the plaintiff's (protected legal activities) under
Complaint No.#(GH-84592-16, Class Code No.#[I/49]) at Green Haven
C.F.

139. The plaintiff Marshall also was forced to submit inmate
grievance complaint after inmate grievance complaint, complaining
of the repeated concerted efforts of prison officials at the
facility level to (thwart) Marshall's ability to effectively
petition both ... administrative and judicial forms for redress of

(31).

his numerous grievance(s) complaining of such egregious and
repeated acts of retaliation, harassment and abuse by facility
security staff member(s) as retribution of the plaintiff's
(**protected legal activities**) i.e., Complaint No.#(GH-81361-15,
**Class Code No.#[I/44]**); Complaint No.#(GH-82206-16, **Class Code
No.#[I/44])** and Complaint No.#(GH-84349-16, **Class Code No.#[I/44]**)
all appealed to the final level of review the " 'Central Office
Review Committee' " ("C.O.R.C") as well out of Green Haven C.F.

140. The plaintiff Marshall was further forced to submit
letter and letter written complaint(s) directly to the defendant
Annucci via the NYSDOCCS, internal " 'Pouch Mailing System' "
complaining of not only the continues concerted efforts of various
prison officials at both the facility's administrative and lower
levels to (**thwart**) plaintiff's ability to effectively petition
both ... administrative and judicial forms for regress of his
numerous grievance(s) upon, which, included but is not limited the
defendant T. Griffin's office as the facility's Superintendent and
Chief Executive Officer in charge as well at
Green Haven C.F.

141. As well as with regards to such continuous and egregious
acts of retaliation, harassment and abuse at the hands of numerous
subordinates of the defendant Annucci's at the facility level as
retribution for the plaintiff's (**protected legal activities**) upon,
which, includes, but is not limited to the filing of numerous
inmate grievance complaint(s), and formal written letter

(32).

complaint(s) directly with defendants T. Griffin, Wilkins, and Melville in which all went unanswered at Green Haven C.F.

142. The plaintiff Marshall did receive a number of responses with regards to his written complaint(s) sent to defendant Annucci by Annucci's designated subordinates to respond in his behalf.

143. While the plaintiff's numerous written complaint(s) submitted at the facility level via its internal mailing system were completely ignored by defendants T. Griffin, Wilkins and Melville as well at Green Haven C.F.

144. The plaintiff Marshall as a result of defendants T. Griffin, Wilkins and Melville willingness to turn a blind eye to the ongoing malfeasance of their immediate facility subordinates, the plaintiff Marshall continued to endure such continuous and egregious acts of retaliation, harassment and abuse upon, which, includes, but is not limited to the repeated denial of access to an approved " 'Medical Shower' " daily to address plaintiff's then chronic and severe urinary incontinent serious medical needs without fear of impunity of any kind whatsoever at Green Haven C.F.

145. The plaintiff Marshall would continued to suffer severe " 'Anxiety and/or Panic Attacks' " prompting immediate facility's " 'P.S.U' " intervention. As a result of such continuous and egregious acts of retaliation, harassment and abuse at the hands of numerous facility security staff member(s) and immediate subordinates of defendants T. Griffin, Wilkins and Melville at

Green Haven C.F.

146. The plaintiff incorporates by reference paragraph(s) 1 through 145.

147. On or about November 16, 2016; the plaintiff Marshall was again subjected to another incident of unprovoked excessive force and sexual abuse at the hands of defendant Murphy while attending and attempting to simply defend himself with regards to a second completely false, and retaliatory Misbehavior report. As authored against Marshall after the plaintiff was returned back to his previous assigned housing " 'A-Block' " as retribution for plaintiff's (**protected legal activities**) upon, which, includes, but is not limited directly to grievance(s) for the repeated deprivation of access to his prescribed psychiatric medication(s) by his immediate housing area security staff member(s) as well at Green Haven C.F.

148. As the defendant Murphy used his personal " **'Baton'** " between the plaintiff's Marshall's legs and buttocks in a deliberate and degrading manner.

149. After defendant Murphy first forced the plaintiff Marshall to stand in a " **'Pat Frisk'** " position with his hands on the wall and legs spread wide inside of the hearing room next to the door.

150. After the plaintiff Marshall first attempted to exist the hearing room as defendant Murphy in a belligerent uncontrollable manner with the smell of alcohol on his breath

(34).

began yelling, screaming and ridiculing Marshall for his good-faith (**protected legal activities**) upon, which, includes, but is not limited to the plaintiff's reports of enduring an unprovoked retaliatory attack of excessive force and sexual abuse at the hands of defendants Garcia, Germano and Freeman at Green Haven C.F.

151. The defendant Murphy furthermore repeatedly referred to the plaintiff Marshall as a " 'big fucking (sic) cry baby' " who according to Murphy whinnied simply because somebody touched his penis (sic) or other unprovoked acts of retaliation, harassment and abuse against the plaintiff for his good-faith (**protected legal activities**), as a female subordinate security staff member of Murphy's present at the hearing room door and witnessing the entire incident unfold, simply stood by laughing without once attempting to intervene to stop Murphy's unlawful acts of excessive force and sexual abuse against the plaintiff at Green Haven C.F.

152. However once defendant Murphy appeared to have been finished yelling, screaming and ridiculing the plaintiff Marshall through the use of excessive force the female subordinate security staff member asked Murphy if he wanted to placed the plaintiff upon " 'Keeplock Confinement' " for no apparent reason whatsoever in which Murphy to his credit decline to do.

153. The plaintiff Marshall fearful for his immediate safety and well being did nothing to further provoke and/or stop the defendant Murphy unprovoked egregious acts of excessive force and sexual abuse as well.

(35).

154. Afterwards on or about November 16, 2016; the plaintiff Marshall immediately submitted both formal and/or informal grievance(s) against defendant Murphy and the subordinate female security staff member who completely refused to intervene and stop Murphy's unprovoked retaliatory egregious acts of excessive force and sexual abuse upon, which, includes, but is not limited to a formal inmate grievance complaint at Green Haven C.F.

155. The plaintiff Marshall also the very next day reported during a facility's " 'Sick-Call Request' " screening encounter swollen, bruised and chronic " 'Testicles Pain' " as a result of the unprovoked retaliatory egregious acts of excessive force and sexual abuse at the hands of defendant Murphy as well at Green Haven C.F.

156. On or about November 17, 2016; the plaintiff Marshall received a written memorandum response from the facility's then Inmate Grievance Program ("IGP") Supervisor advising the plaintiff that his reports of suffering excessive force and sexual abuse at the hands of defendant Murphy had been forwarded to the Deputy Superintendent for Security defendant Wilkins to address plaintiff " 'P.R.E.A' " complaint in accordance with the NYSDOCCS, revised Inmate Grievance Program Directive No.#4040 and allegedly as per the department's guidelines at Green Haven C.F.

157. On or about November 21, 2016; the plaintiff Marshall also received a then standard facility's IGP office " 'Inmate Grievance Resolution Committee Acknowledgment of Receipt' "

(36).

grievance(s) for excessive force and sexual abuse, retaliation and harassment, by subordinate correctional officer(s), Marshall was made to endure even more egregious acts of retaliation and harassment for his protected legal activities at Green Haven C.F.

161. The plaintiff Marshall had repeatedly expressed his concerns of the way in which defendant Melville went about conducting his alleged " 'P.R.E.A' " interviews of the plaintiff to Melville to absolutely no avail whatsoever at Green Haven C.F.

162. As the defendant Melville would simply continue to, engaged in his continuous pattern of conduct, directed at the plaintiff Marshall with malice, and in deliberate indifference to Marshall's immediate health, safety and well being at Green Haven C.F.

163. The plaintiff Marshall simply felt to terrified over the level of continuous, and malicious acts of retaliation and harassment, by defendant Melville's subordinate correctional officer(s), that he did not grieved the matter in which Melville went about allegedly interviewing Marshall over his " 'P.R.E.A' " complaints/reports, afraid of up setting the one individual who was allegedly supposed to be protecting the plaintiff at Green Haven C.F.

164. The plaintiff Marshall was likewise never interviewed any investigator from the NYSDOCCS, then Office of Special

(37).

Investigations ("O.S.I"), formally known as the Inspector
General's Office ("I.G."), just as the plaintiff had been with
regards to his first reported " 'P.R.E.A' " incident, complaining
of such egregious acts of retaliatory, excessive force and sexual
abuse, by defendants Garcia, Germano and Freeman. In direct
violation of the NYSDOCCS, own promulgated and ratified "
'P.R.E.A' " alleged guidelines at Green Haven C.F.

165. While yet the plaintiff Marshall's numerous
grievance(s), and written complaint(s) addressed directly to
defendants Annucci, T. Griffin, Wilkins and Melville, complaining
of such continuous patterns of, malice, retaliatory acts of,
harassment and abuse, by correctional officer(s), would be
subjected, directly to shammed long standing investigation common
customs, practices, policies and procedures, by defendant
Johanemen, and/or other immediate facility area supervising
correctional staff member(s), who themselves were either directly
implicated as conspirators in such ongoing campaign of
retaliation, harassment abuse, directed at the plaintiff
Marshall, and/or were close colleagues or family member(s) of the
correctional officer(s) allegedly under investigation. As the
result of, such shammed investigation common customs, practices,
policies and procedures, promulgated, ratified and/or allowed to
exist at Green Haven C.F.

166. As a result of, such promulgated, ratified and/or
allowed to exist, shammed investigative common customs,

practices, policies and procedures, an ongoing campaign and level of retaliation, harassment and abuse, by subordinate correctional officer(s), directed at plaintiff Marshall, continued by correctional officer(s) without fear of impunity at Green Haven C.F.

167. On or about February 7, 2017; at approximately 5:30 p.m., plaintiff Marshall would see defendant Murphy while returning to plaintiff's then assigned housing area " 'A-Block' " corridors, who threaten Marshall promising to get even with the plaintiff for making a " 'P.R.E.A' " complaint/report against Murphy as well at Green Haven C.F.

168. Then thereafter on or about February 14, 2017; at approximately 2:00 p.m., less than a week later, defendant Murphy would attempt to make good on his threats, directed at plaintiff Marshall, summoning Marshall down to the facility's " 'Disciplinary Office' " under the false pretense, that the plaintiff was needed down at the facility's Disciplinary Office, despite the fact that, not only did the plaintiff not have any pending ongoing disciplinary hearing proceeding, Marshall simply had never agreed to be a witness for any other inmates/prisoners at the time at Green Haven C.F.

169. However, Plaintiff Marshall, would not attempt to proceed down to the facility Disciplinary Office, well aware that it was more likely than not, one of several frequently used tricks/ploys, by correctional officer(s) looking to viciously

(40).

and maliciously assault the plaintiff, without need, provocation or penological justification at Green Haven C.F.

170. On or about February 16, 2017; the facility Inmate Grievance Program ("IGP") office, would log and file, Plaintiff Marshall's grievance, complaining of another attempt, by correctional officer(s) to lure Marshall out of his cell, under Complaint No.#(GH-85677-17, **Class Code No.#[I/49]**), and Title it as an alleged " **'Assault'** " complaint, reported by the plaintiff as an attempted assault at Green Haven C.F.

171. On or about March 16, 2017; Plaintiff Marshall, was finally transferred out of Green Haven C.F.

**Ongoing Excessive Force/Retaliation/Harassment By Prison Guards**:

172. The plaintiff incorporates by reference paragraph(s) 1 through 171.

173. On or about the early part of 2015; the entire facility's " **'Executive/Administrative Team'** " member(s) upon, which, includes, but is not limited to the Superintendent and Chief Executive Administrative Officer, and his Deputy Superintendent(s), were all ordered removed from the designated positions and duties at Green Haven C.F.

174. After the discovery of approximately [t]wo separate " **'I-Phones** and **Portable DVD Players'** " in which lead to the arrest of at least one facility correctional officer, for his role in facilitating the introduction of such [**contraband**] into the facility and its transfer to the

(41).

inmates/prisoners general population at Green Haven C.F.

175. As a result the entire facility inmates/prisoners general population was ordered lockdown and the **NYSDOCCS**, " **'Crisis Emergency Response Team'** " (**"C.E.R.T"**) members were called in to conducted an extensive facility wide search of the inmates/prisoners population, their personal belongings and common areas accessible to all security and civilian staff members as well at Green Have C.F.

176. Afterwards numerous facility inmate/prisoner formal and/or informal grievance(s), and inmate personal property claim(s) were filed alleging damaged or destroyed personal property upon, which, includes, but is not limited to active legal case materials/documents in which occurred throughout the course of the extensive search conducted by the department's " **'CERT'** " members at Green Haven C.F.

177. As well as grievance(s) alleging egregious unprovoked acts of excessive force and/or sexual abuse at the hands of facility security staff member(s) as well at Green Haven C.F.

178. Thereafter on or about June 12, 2015; approximately three additional " **'I-Phones'** " (sic) were discovered, resulting in another institutional lockdown and " **'CERT'** " members being called back in to conduct another extensive search with similar allegation(s) of damaged/destroyed inmates/prisoners personal property, and excessive force and/or sexual abuse as well.

180. The defendants P. Griffin was responsible for calling in

(42).

the department's " 'CERT' " members on each occasion at Green
Haven C.F.

181. At the time defendant P.Griffin served in the role as "
'Associate Deputy Commissioner for Correctional Facilities' " for
the NYSDOCCS.

182. The defendant P. Griffin is also the biological brother
of defendant T. Griffin as employed by the NYSDOCCS.

183. The defendant P. Griffin's then duties includes, but is
not limited to the immediate supervision, management and effective
operations of a specific number of Correctional Facilities
designated and identified as belonging to a particular " 'HUB' "
cluster of correctional facilities for the NYSDOCCS in 2015
through 2016.

184. In the early part of 2015; the defendant T. Griffin
(sic) was brought to replace the outgoing facility's
Superintendent and Chief Executive Administrative Officer in
charge at Green Haven C.F.

185. The defendant P. Griffin (sic) was then one of several
immediate area supervisor(s) over the defendant T. Griffin (sic)
his biological brother in 2015 through 2016.

186. The defendant Wilkins was also brought in to replace the
outgoing Deputy Superintendent for Security in the early part of
2015 through 2016 as well at Green Haven C.F.

187. Thereafter under the immediate supervision, management
and control of defendants T. Griffin and Wilkins, their was a

(43).

a significant sharp increase in the number of inmate/prisoner grievance(s), and claim(s) alleging the unlawful confiscation, destruction, and missing and/or stolen inmates/prisoners person property at the hands of security staff member(s) beginning in the early part of 2015 at Green Haven C.F.

188. The vast majority of which consist largely of inmates/prisoners grievance complaint(s) alleging retaliatory egregious acts of brutal and excessive force, retaliation, harassment and abuse of authority at the hands of security staff member(s) upon, which, includes, but is not limited to low level subordinate Correction Officer(s) and/or immediate area supervisor(s) " 'Correction Sergeant(s) and/or Correction Lieutenant(s)' " as well without fear of impunity from prison Executive/Administrative Official(s) at Green Haven C.F.

189. A large amount of inmates/prisoners have even reported suffering serious physical injuries upon, which, includes, but is not limited to the receipt of stitches, broken bones and even teeth that were knocked out in which at times required immediate outside hospitalization out of Green Haven C.F.

190. A majority of inmates/prisoners have likewise reported incident of abusive and humiliating " 'Pat Frisk and/or Strip Searches' " at the hands of facility security staff member(s) despite the presence of maybe an immediate area supervisor as well.

191. As well as deliberate malicious and sadistic acts of

(44).

sexual abuse without need, provocation and/or penological purpose
at the hands of security staff member(s) either simply to satisfy
an officer(s) own personal sexual gratification and/or humiliate
an inmate/prison as retribution for his (**protected legal
activities**) while acting under Color of New York State law at
Green Haven C.F.

192. Under the immediate supervision, management and control
of defendants T. Griffin and Wilkins reported incident(s) of
alleged " '**Assault Upon Staff**' " by inmates/prisoners doubled two-
fold in apposed to that of which had accrued under their
predecessor(s) in office at Green Haven C.F.

193. However such reports of alleged " '**Assault Upon Staff**' "
by an inmate/prisoner were actually being used as a <u>pretext</u> for
covering up what was really incident(s) of " '**Excessive Force**' "
by facility security staff member(s) as retribution against an
inmates/prisoners for their use of certain (**protected legal
activities**) upon, which, includes, but is not limited grievance(s)
against a State officer for [r]etaliation, harassment and/or
unprovoked acts of sexual abuse without need or penological
purpose at Green Haven C.F.

194. As well as inmates/prisoners grievance(s) complaining of
haven been subjected to an " '**abusive pat frisk, strip
frisk/search, cell searches, false positive urinalysis test
results, wrongful** and **excessive confinement,** as well as **denied
procedural DUE PROCESS** after receiving a completely **false** and

(45).

retaliatory written **Misbehavior report,** and the **unlawful
confiscation** and/or **theft** of **personal property/belongings' "** at
the hands of facility security staff member(s) without fear of
impunity from facility executive/administrative prison official(s)
at Green Haven C.F.

195. Under the immediate supervision, management and control
of defendants T. Griffin and Wilkins reported incident(s) of
" **'malicious** and **sadistic acts** of **sexual abuse' "** without need or
penological purpose at the hands of facility security staff
member(s) likewise doubled-two fold in opposed to that of which
occurred under their predecessor(s) in office as well at Green
Haven C.F.

196. In fact lower level subordinate correction
officer(s)/security staff member(s), under the immediate
supervision, management and control of defendants T. Griffin and
Wilkins had grown so brazen to have formed what became well known
through the entire inmates/prisoners general population as
" **'Beat Down Squads' "** (sic) with the sole purpose of terrorizing,
abusing, controlling and punishing inmates/prisoners, especially
those who used their (**protected legal activities**) challenging the
conditions of their confinement at the hands of security staff
member(s) without fear of impunity from any prison executive
and/or administrative official(s) while acting under Color of New
York State law at Green Haven C.F.

197. The defendants Garcia, Germano and Freeman were well

(46).

known to the then vast majority of the entire inmates/prisoners
population as the worst of the facility's " 'Beat Down Squad' "
member(s) responsible for using unlawful acts of excessive force,
harassment, retaliation and sexual abuse as punishment and control
without need, provocation and legitmant penological purpose
against inmates/prisoners such as the plaintiff Marshall, and as
retribution for the use of (**protected legal activities**) in 2015
through 2016 while confined at Green Haven C.F.

198. The plaintiff incorporate by reference paragraph(s) 1
through 197.

199. The defendants Annucci, P. Griffin, Ferro, Fonda, T.
Griffin, Wilkins and Melville all knew or should have known, that
unlawful acts of excessive force, harassment, retaliation and
sexual abuse were being used against inmates/prisoners such as the
plaintiff Marshall en masses, as punishment, control and
retribution for the use of (**protected legal activities**) at the
hands of subordinate correction officer(s)/security staff
member(s) without need, provocation and/or legitmant penological
purpose or fear of impunity by supervising prison
executive/administrative official(s) upon, which, includes, but is
not limited to the submissions of formal grievance(s) and prisoner
civil rights complaint(s) challenging the unconstitutional
conditions of their confinement while confined in 2015 through
2016 at Green Haven C.F.

200. The defendants Annucci, P. Griffin, Ferro, Fonda, T.

(47).

Griffin, Wilkins and Melville as prison supervising executive/administrative official(s) for the **NYSDOCCS**, all knew or should have know, that unlawful acts of excessive force, harassment, retaliation and sexual abuse were being sued against inmates/prisoners such as the plaintiff Marshall as punishment and control, and as retribution for the use of (**protected legal activities**) at the hands of their subordinate correction officers/security staff member(s) upon, which, includes, but is not limited to the submissions of grievance(s) and prisoner civil rights complaints while confined in 2015 through 2016 at Green Haven C.F.

201. On or about October 27, 2015; a Sarah Abdelmessih, a then volunterr staff attorney in behalf of the Legal Aid Society, Civil Practice, Prisoners Rights Project, located at 199 Water Street, New York, N.Y. 10038. Sent a detailed written letter of communication addressed directly to defendants T. Griffin and Fonda as well see:(Annexed October 27, 2015 Letter Of Communication By Sarah Abdelmessih Volunteer Attorney Legal Aid Society Civil Practice Prisoners Rights Project as Plaintiff's Exhibit [A]).

202. Ms. Abdelmessih first in substance advised both defendants T. Griffin and Fonda of their office then recent receipt of approximately five different inmates/prisoners letter(s) reporting what was described as concerns about their treatment, as well as the treatment of other inmates/prisoners, at

(48).

Green Haven C.F. (Plaintiff's Exhibit [A]).

203. The letter from Attorney Abdelmessih then go's on to described how these inmates/prisoners report the loss of certain earned privileges and retaliation in the wake of the escape from Clinton Correctional Facility ("Clinton C.F."), and that correctional officer(s) were abusing their power/authority and creating a threatening atmosphere throughout the entire facility as conveyed to her office (Plaintiff's Exhibit [A]).

204. As well as that these inmates/prisoners report that inmates at Green Haven, are being punished en masses upon, which, includes, but is not limited to the facility's than Honor Housing Blocks " 'C and D Blocks' " while confined at Green Haven C.F.

205. In addition these inmates/prisoners report that in addition to the untimely receipt of incoming inmate correspondence/mail i.e., newspapers and magazine subscriptions, money orders etc. The personal property of inmates' are being taken away from them for no apparent reason (Plaintiff Exhibit [A]).

206. As well as in substance reporting that with regards to one particular incident involving the unnecessary use of tear gas (sic) on August 3, 2015, following a fight between (two inmates) inside the facility's Messhall. As retribution everyone, approximately 300 inmates in all, were sent out into the Messhall's nearest yard, with their eyes and skin burning and made to stand in the how blistering Sun while standing with their hands

(49).

on the wall for in over approximately one full hour before COs
made them strip to their underwear and go under the outdoors
showers. Once they were done, they were ordered to leave all their
clothing and property, including watches, books, belts, wallets,
kufi, yarmulkes, address books, eyeglasses, and legal documents,
all of which were reportedly destroyed by the officers
(Plaintiff's Exhibit [A]).

207. Finally these very same inmates/prisoners report to
their office that they were afraid to even submit grievance(s)
challenging the conditions of their confinement for fear of
retaliation, after they were told that the more grievances they
file, the more privileges would be taken away from them
(Plaintiff's Exhibit [A]).

208. Ms. Abdelmessih go's on to conclude her communication to
defendants T. Griffin and Fonda requesting that an investigation
take place to address these inmates/prisoners complaint(s) and to
ensure that the privileges earned by inmates housed on honor block
are reinstated, and to ensure that DOCCS rules about inmates
property are not being arbitrarily destroyed as well at Green
Haven C.F (Plaintiff Exhibit [A]).

209. However neither defendant T. Griffin or Fonda would
initiate an investigation into one of numerous reports of
inmates/prisoners being punished an masses, and nor were any
facility correction officers/security staff member(s) were held
accountable for abuse of their authority over inmates/prisoners in

(50).

response to Attorney Abdelmessih's communication with regards to the wide spread abuse by officers at Green Haven C.F.

210. On or about January 22, 2016; another such letter communication was sent by a former Member of the Assembly for the State of New York, Chair Committee on Correction Codes Subcommittee on Criminal Procedure Mr. Daniel O'Donnell office addressed directly to the defendant Annucci as Acting Commissioner for the NYSDOCCS as well (Annexed Herein Former New York State Assembly Member Daniel O'Donnell January 22, 2016 Letter Communication as Plaintiff's Exhibit [B]).

211. In substance Mr. O'Donnell started office his letter of communication pretty much like the piece of communication in which were received by defendants T. Griffin and Fonda from The Legal Aid Society Civil Practice Prisoners Rights Project, by noting that his office two had received a significant number of letters from inmates at Green Haven Correctional Facility ("Green Haven C.F.") conveying details of (brutality) against inmates that have allegedly occurred since Superintendent Thomas Griffin ("defendant T. Griffin") and his new executive team i.e., Deputy Superintendent(s) were appointed. Along with letter(s) complaining about the drastic reduction in programming for inmates/prisoners every since the new administration arrived at Green Haven C.F. (Plaintiff's Exhibit [B]).

212. Mr. O'Donnell then go's on to detailed how the many letters in which his office had received from inmates/prisoners at

(51).

at the facility indicate that the entire administration at Green
Haven was replaced in 2015, after two **cell phones** and three
**portable DVD** (sic) **players** were introduced by facility personnel,
including an officer who was apparently arrested for his role in
facilitating the introduction of such contraband and its transfer
to inmates (Plaintiff Exhibit [B]).

213. In substance that thereafter a lockdown commenced, with
" 'CERT' " members being called in to conduct a search upon,
which, inmates/prisoners reported that their personal property and
legal papers were damaged or destroyed and that a number of
inmates were assaulted in the course of the search as well
(Plaintiff's Exhibit [B]).

214. Afterwards, on or about June 12, 2015, three additional
" 'I-Phones' " were found, resulting in another lockdown, and "
'CERT' " member again being called in to conduct a search, and
similar damage and assaults against inmates being reported at
Green Haven C.F. (Plaintiff's Exhibit [B]).

215. On the issue of (brutality and retaliation), Mr.
O'Donnell would report that letter(s) were received in which
inmates/prisoners reported that there have been over **(forty)**
assaults by officers on inmates since Superintendent Griffin
("defendant T. Griffin") has arrived, and that most of these
inmates have significant injuries that required stitches and
sometimes outside hospitalization (Plaintiff's Exhibit [B]).

216. How another inmate reported that he needed two surgeries

(52).

for orbital bone reconstruction after suffering multiple facial
bone factures and a host of other injuries that occurred when he
was assaulted by " 'CERT' " members, who appears to have permanent
damages to his vision (Plaintiff's Exhibit [B]).

217. While another inmate describes being assaulted by an
officer during a **pat frisk** in which the officer made a deliberate,
swift upward motion of his arm into the inmate's testicles,
resulting in blood in his urine for which he had been refused
treatment by a specialist (Plaintiff's Exhibit [B]).

218. Mr. O'Donnell would then go on to report that
inmates/prisoners write of being threatened by staff for
attempting to file grievance(s), and that out a the grievance(s)
upon, which, have been filed are investigated by either close
colleagues of the officer(s) being grieved (Plaintiff's Exhibit
[B]).

219. As well as reporting that inmate/prisoners who file a
grievance(s) against an officer frequently received a false and
retaliatory Misbehavior report issued by the same officer who was
the subject of the grievance, hoping that defendant Annucci's
office had at least created a policy and procedure to track such
occurrences, so that officers who retaliate against inmates for
filing grievance(s) can be identified and disciplined for their
unprofessional behavior as well (Plaintiff's Exhibit [B]).

220. As former New York State Assemblymen Mr. O'Donnell go's
on to furthermore noted that inmates/prisoners have likewise

(53).

reported that attempts to cover up staff abuse against
inmates/prisoners correctional officers/security staff member(s)
have placed at least " '50' " inmates within the facility's
Special Housing Unit ("SHU") for allegedly assaulting staff, and
that due to the violence at Green Haven, members of the Special
Investigation unit ("O.S.I") had been visiting the facility almost
every day for the past (five months) in response to inmates
complaint(s) and grievance(s) to no avail (Plaintiff Exhibit [B]).

221. As well as that many of the letter(s) that his office
had received from inmates/prisoners regarding Green Haven speak of
provocation and retaliation, by guards/security staff member(s)
who routinely use profanity while given instructions/direct
orders, poking inmates in the back with " 'Batons' " (sic) and
committing what known to the inmates/prisoners general population
as " 'burning' " inmates, by leaving inmates/prisoners confined
and locked down within their cells without (food or recreation)
sometimes for days, simply to make a point about who was in charge
at Green Haven (Plaintiff Exhibit [B]).

222. In addition to other acts of excessive force and abuse
such as using their " 'Batons' " against inmates' necks, leaving
inmates handcuffed behind their backs and naked in cold rooms, and
intimidating inmates (**witnesses**) to assaults by officer(s) to
discourage such (**witnesses**) from testifying against the officer(s)
as further examples of what Mr. O'Donnell clearly noted
unacceptable common customs, practices, policies and procedures in

(54).

in which violate the civil and human rights of prisoners that
(**must**) be stopped (Plaintiff's Exhibit [B]).

223. In closing Mr. O'Donnell would go on to note
inmates/prisoners report(s) of the cancellation of the facility's
Alternative to Violence Program ("AVP") for in over several
months, significant changes to the facility's Honor Housing
block(s), and wholesale changes, reduction and/or elimination of
inmates/prisoners access to adequate medical care and treatment to
address their serious medical needs as created by judicial
intervention and oversight, and the arbitrary seizure/confiscation
of some hundreds of inmates/prisoners " **'Sangean'** " radios now in
possession and being used by subordinate correctional
officers/security staff members on their assigned
" **'Post'** " areas/stations under the orders of defendant T. Griffin
throughout Green Haven C.F. (Plaintiff's Exhibit [B]

224. The plaintiff incorporates by reference paragraph(s) 1
through 223.

225. Defendants Annucci, P. Griffin, Ferro, Fonda, T.
Griffin, Wilkins and Melville all helped to maintain such
malicious and sadistic acts of excessive force, retaliation,
harassment and sexual abuse of inmates/prisoners such as the
plaintiff Marshall without need, provocation or penological
purpose at the hands of subordinate correctional offiecrs/security
staff members to control and/or as punishment of inmates/prisoners
for the use of their (**protected legal activities**), by completely

(55).

failing to promulgated and ratified common customs, practices,
policies and procedures for tracking such occurrences,
correctional officers who retaliate, harass and/or sexual abuse
inmates/prisoners, so that such officers can be identified and
disciplined for their malicious and sadistic continuous patterns
of malice directed at inmates/prisoners while acting under Color
of New York State law in 2015 through 2017 effecting all NYSDOCCS
Correctional Facilities upon, which, includes, but is not limited
to Green Haven C.F.

226. Defendants Annucci, P. Griffin, T. Griffin, Wilkins and
Melville as prison executive/administrative officials were all
grossly negligent in supervising and disciplining subordinate
correctional officers/security staff members for their continuous
patterns of malice, directed at inmates/prisoners such as the
plaintiff Marshall without need, provocation or penological
justification/purpose for inmates/prisoners use of their
(**protected legal activities**) upon, which, includes, but is not
limited to the submissions of formal " 'P.R.E.A' "
complaints/reports whether verbal and/or in written in 2015
through 2017 at Green Haven C.F.

227. Defendants Annucci, P. Griffin, Ferro, Fonda, T.
Griffin, Wilkins and Melville all exhibited deliberate
indifference towards the continuous patterns of malice and abuse,
directed at inmates/prisoners such as the plaintiff Marshall at
the hands of subordinate correctional officers/security staff

(56).

members, by completely failing to act on information indicating
that such unconstitutional acts of excessive force, harassment,
retaliation and sexual abuse were occurring without need,
provocation or penological justification/purpose by correctional
officers for inmates/prisoners use of their (**protected legal
activities**) upon, which, includes, but is not limited to the
submissions of formal inmate grievance complaint(s) challenging to
conditions of their confinement in 2015 through 2017 at Green
Haven C.F.

228. Defendants Annucci, P. Griffin, Ferro, Fonda, T.
Griffin, Wilkins and Melville all allowed the continuance patterns
of malice, and abuse of inmates/prisoners such as the plaintiff
Marshall without need, provocation or penological
justification/purpose at the hands of subordinate correctional
officers/security staff members, by promulgating, ratifying and/or
allowing to exist (shammed) investigative common customs,
practices, policies and procedures for investigating
inmates/prisoners grievance(s) complaining of suffering excessive
force, harassment, retaliation and sexual abuse by correctional
officers in 2015 through 2017 at Green Haven C.F.

229. Defendants Annucci, P. Griffin, Ferro, Fonda, T.
Griffin, Wilkins and Melville all completely failed to protect
inmates/prisoners such as the plaintiff Marshall from what
Annucci, P. Griffin, Ferro, Fonda, T. Griffin, Wilkins and
Melville knew or should have known were continuous patterns of

(57).

of actual malice and abuse, without need, provocation or
penological justification/purpose, by defendants Garcia, Germano
and Freeman, acting in concert with, in consiring with, and/or
aiding and abetting one another and others for whose acts they are
liable, for the use of their (**protected legal activities**) upon,
which, includes, but is not limited to prisoner civil rights
complaints and petitions challenging the conditions of confinement
in 2015 through 2017 a Green Haven C.F.

230. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin
and Wilkins as prison executive/administrative officials
promulgated, ratified and/or allowed to exist common customs,
practices, policies and procedures upon, which, Annucci, P.
Griffin, Ferro, Fonda, T. Griffin and Wilkins knew or should have
known would rendered any and/or all inmates/prisoners such as the
plaintiff Marshall, grievances alleging acts of malice, by
correctional officers/security staff members, without need,
provocation or penological justification/purpose as unsubstantited
claims in 2015 through 2017 at Green Haven C.F.

**Plaintiff's Damages And Injuries:**

231. Plaintiff Marshall's injuries and damages includes, but
is not limited to;

      (a). Past and future physical pain, illness and injuries;
      chronic and severe headaches, insomnia, elevated blood
      pressure, poor concentration, memory loss, loss of
      appetite, weight loss, painful physical therapy
      regimens and muscle spasms;

(b). Past and future exacerbated pre-existing mental and
emotional diagnosed serious psychiatric medical needs;
severe depression, anxiety, panic attacks, erratic
behavior, memory loss, and post traumatic stress
disorder ("P.T.S.D"); and loss of interest in social
activities;

(c). Loss of sexual drive, and a failed marriage;

## FIRST CAUSE OF ACTION

(42 U.S.C. §§ 1983, 1985; Conspiracy, Retaliation, Wanton,
Malicious And Sadistic Acts of Excessive Force, Cruel And
Unusual Punishment, Deny Rights to Petition Under the
First, Eighth And Fourteenth Amendments; Defendants
Garcia And Germano)

232. The plaintiff incorporates by reference paragraph(s) 1
through 231.

233. By virtue of the foregoing, individual Defendants
Garcia and Germano, acting in concert with, in conspiring with,
and/or aiding and abetting one another and others for whose acts
they are liable, without need, provocation or penological
purpose, wantonly, maliciously and sadistically used excessive
force, directed at Plaintiff Marshall and rendered the Plaintiff
unconscious and defenseless for use of Plaintiff's protected
legal activities.

234. Defendant Gacria and Germano, knowingly and willfully
acted with actual malice to cause Plaintiff Marshall harm.

235. Defendants Garcia and Germano, engaged in a wanton, and
malicious continuous pattern of conduct, directed at Plaintiff
Marshall with the intention to cause, or reckless disregard of
the substantial probability that would cause, Plaintiff Marshall

to suffer cruel and unusual punishment as a result of, and that of which was proximately caused, by Defendants Garcia and Germano's aforementioned actions.

236. By virtue of the foregoings, Plaintiff Marshall suffered actual damages and injuries as identified in ¶ 224.

### SECOND CAUSE OF ACTION

(42 U.S.C. §§ 1983, 1985; Conspiracy, Retaliation, Wanton, Malicious And Sadistic Acts of Excessive Force And Sexual Abuse, Denied Freedom of Religion, Denied Rights to Petition, Cruel And Unusual Punishment Under the First, Eighth And Fourteenth Amendments; Defendants Garcia And Germano)

237. The plaintiff incorporates by reference paragraph(s) 1 through 236.

238. By virtue of the foregoing, individual Defendants Garcia and Germano, acting in concert with, in conspiring with, and/or aiding and abetting one another and others for whose acts they are liable, without need, provocation or penological purpose, wantonly, maliciously and sadistically used excessive force, directed at Plaintiff Marshall using Plaintiff's " 'Religious Head' " covering to sexually abused Plaintiff as he laid unconscious and defenseless as retaliation for Plaintiff's use of protected legal activities.

239. Defenadnts Garcia and Germano, knowingly and willfully with actual malice to cause, Plaintiff Marshall actual harm, believing Plaintiff to have been of the " 'Muslim Islamic' " religious faith.

240. Defendants Garcia and Germano, engaged in a wanton, and

(60).

malicious continuous pattern of conduct, directed at Plaintiff Marshall with the intention to cause, or reckless disregard of the substantial probability that would cause, Plaintiff to suffer cruel and unusual punishment as a result of, and that of which was proximately caused, by Defendants Garcia and Germano's aforementioned actions.

241. By virtue of the foregoing, Plaintiff Marshall suffered actual damages and injuries as identified in ¶ 224.

### THIRD CAUSE OF ACTION

(42 U.S.C. §§ 1983, 1985; Conspiracy, Wanton, Malicious And Sadistic Acts of excessive Force, Cruel And unusual Punishment Under the First, Eighth And Fourteenth Amendments; Defendant Freeman)

242. The plaintiff incorporates by reference paragraph(s) 1 through 241.

243. By virtue of the foregoing, individual Defendant Freeman, acting in concert with, in conspiring with, and/or aiding and abetting other persons for whose acts he is liable, without need, provocation or penological purpose, wantonly, maliciously and sadistically used excessive force, directed at Plaintiff Marshall to intimidate and prevent Plaintiff from using his rights to petition both ... administrative and judicial forms for redress of Plaintiff's grievances against Defendants Garcia and Germano for retaliatory acts of excessive force and sexual abuse.

244. Defendant Freeman, acted wantonly, willfully and

(61).

knowingly with malice to cause, Plaintiff Marshall harm.

245. Defendant Freeman, engaged in a wanton, malicious continuous pattern of conduct, directed at Plaintiff Marshall to intimidate and prevent Plaintiff from using his rights to petition both ... administrative and judicial forms for redress of his grievances against a State officer.

246. Defendant Freeman, engaged in that pattern of continuous conduct, with the intention to cause, or reckless disregard of the substantial probability that would cause, Plaintiff Marshall cruel and unusual punishment as a result of, and that of which was proximately caused, by Defendant Freeman's aforementioned actions.

247. By virtue of the foregoing, Plaintiff Marshall suffered actual damages and injuries in § 224.

## FOURTH CAUSE OF ACTION

**(42 U.S.C. §§ 1983; Retaliation, Wanton, Malicious And Sadistic Acts of Excessive Force And Sexual Abuse, Cruel And Unusual Punishment Under the First, Eighth And Fourteenth Amendments; Defendant Murphy)**

248. The plaintiff incorporates by reference paragraph(s) 1 through 247.

249. By virtue of the foregoing, individually Defendant Murphy without need, provocation or penological purpose, wantonly, maliciously and sadistically used excessive force and sexually abused Plaintiff Marshall in retaliation for his protected legal activities.

250. Defendant Murpy, acted wantonly, maliciously and

(62).

sadistically to cause, Plaintiff Marshall physical harm.

251. Defendant Murphy, engaged in a wanton, and malicious continuous pattern of conduct, directed at Plaintiff Marshall with the intention to cause, or reckless disregard that it would cause, Plaintiff to suffer cruel and unusual punishment as a result of, and that of which proximately caused, by Defendant Murphy's aforementioned actions.

253. By virtue of the foregoing, Plaintiff Marshall has suffered damages and injuries as identified in ¶ 224.

## FIFTH CAUSE OF ACTION

(42 U.S.C. §§ 1983, 1985; Conspiracy, Deliberate Indifference Health, Safety And Well Being, Cruel And Unusual Punishment Under the First, Eighth And Fourteenth Amendments; Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley And Johanement)

254. The plaintiff incorporates by reference paragraph(s) 1 through 252.

255. By virtue of the foregoing, individually Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanement, acting in concert with, in conspiring with, and/or aiding and abetting one another and others for whose acts they are liable, help to maintain, and continue without need, provocation or penological justification, wanton, malicious and sadistic acts of, excessive force, sexual abuse, retaliation and harassment, directed at inmates/prisoners such as Plaintiff Marshall, by subordinate correctional officer(s) as retribution for use of protected legal activities, and as control and punishment.

(63).

255. Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanemen, all acted in a willful manner, with malice, directed at inmates/prisoners such as the Plaintiff Marshall.

256. Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanemen, knew or should have known of, the propensity of their subordinate correctional officer(s) to use excessive force, sexual abuse, retaliation and harassment, without need, provocation or penological purpose, directed at inmates/prisoners such as the Plaintiff Marshall, and P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanemen, were all deliberately indifference to inmates/prisoners such as the Plaintiff's immediate health, safety and well being, by failing to take action to curtail the abuse.

257. Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanemen, all engaged in a wanton, malicious and continuous pattern of conduct, directed at inmates/prisoners such as the Plaintiff Marshall to intimidate, and create a hindrance to inmates/prisoners such as the Plaintiff's rights to petition both ... administrative and judicial forms for regress of grievances against State officers.

258. Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley and Johanemen, engaged in that pattern of malicious and continuous conduct, with the intention to cause, or reckless disregard of the substantial probability that it would cause,

(64).

Plaintiff Marshall to, suffer acts of cruel and unusual punishment as a result of, and that of which was proximately caused, by Defendants P. Griffin, T. Griffin, Wilkins and Melville's aforementioned actions.

259. By virtue of the foregoing, Plaintiff Marshall has suffered damages and injuries as identified in ¶ 224.

SIXTH CAUSE OF ACTION

(42 U.S.C. § 1983; Help To Maintain, Wanton, Malicious And Sadistic Acts Of Excessive Force, Sexual Abuse, Retaliation And Harassment, Denial Of Equal Protection, Deliberate Indifference Health, Safety And Well Being, Cruel And Unusual Punishment Under the Eighth And Fourteenth Amendments; Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin And Wilkins)

260. The plaintiff incorporates by reference paragraph(s) 1 through 259.

261. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, help to maintain, continuous patterns of, wanton, malicious and sadistic acts of, excessive force, sexual abuse, retaliation and harassment, directed at Plaintiff Marshall, by correctional officer(s) without need, provocation or penological justification, by completely failing to promulgate and ratify adequate, simple common customs, practices, policies and procedures to, track such occurrences, and help identify and discipline, correctional officer(s) for use of, wanton, malicious and sadistic continuous patterns of misconduct, as retribution for inmates/prisoners use of, protected legal activities, and as for control and punishment.

(65).

262. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, knowingly and willfully, acted in deliberate indifference, directed at inmates/prisoners such as Plaintiff Marshall's immediate health, safety and well being.

263. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, knew or should have known of, the propensity of correctional officers, without need, provocation or penological justification, use of excessive force, sexual abuse, retaliation and harassment, directed at inmates/prisoners such as Plaintiff Marshall for, use of protected legal activities, and as means of control and punishment, and completely failed to take actions to curtail such unconstitutional prison living conditions, constituted a denial of equal protection under the law.

264. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, engaged in a willful and continuous pattern of conduct, with the intention to cause, or reckless disregard of the substantial probability that it would cause, Plaintiff Marshall to, suffer cruel and unusual punishment as a result of, Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, aforementioned actions.

265. By virtue of the foregoing, Plaintiff Marshall suffered damages and injuries as identified in ¶ 224.

## SEVENTH CAUSE OF ACTION

(42 U.S.C. § 1983; Failure To Act On Information, Deliberate Indifference Health, Safety And Well Being,

Denial Of Equal Protection, Cruel And Unusual
Punishment Under the Eighth And Fourteenth Amendments;
Defendants Annucci, P. Griffin, Ferro, Fonda,
T. Griffin And Wilkins)

266. The plaintiff incorporates by reference paragraph(s) 1
265.

267. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin
and Wilkins, completely failed to act on information, indicating
that, correctional officers, without need, provocation or
penological justification, used excessive force, sexual abuse,
retaliation and harassment, directed at inmates/prisoners such as
Plaintiff Marshall for, use of protected legal activities, and as
a means of control and punishment, and completely failed to curtail
such unconstitutional prison living conditions, and constituted a
denial of equal protection under the law.

268. Defendants Annucci, P. Griffin, Ferro, Fonda,
T. Griffin and Wilkins, knew or should have known of, the
propensity of correctional officers, without need, provocation or
penological justification use of, excessive force, sexual abuse,
retaliation and harassment, directed at inmates/prisoners such as
Plaintiff Marshall for use of, protected legal activities, and as
a means of control and punishment.

269. Defendants Annucci, P. Griffin, Ferro, Fonda,
T. Griffin and Wilkins, knowingly and willfully, acted in
deliberate indifference, directed at inmates/prisoners such as
Plaintiff Marshall's immediate health, safety and well being.

270. Defendants Annucci, P. Griffin, Ferro, Fonda,

T. Griffin and Wilkins, engaged in a willful and continuous pattern of conduct, with intention to cause, or reckless disregard of the substantial probability that it would cause, Plaintiff Marshall to, suffer cruel and unusual punishment as a result of, Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, aforementioned actions.

266. By virtue of the foregoing, Plaintiff Marshall suffered damages and injuries as identified in ¶ 224.

<u>EIGHTH CAUSE OF ACTION</u>

**(42 U.S.C. § 1983; Grossly Negligent Supervision And Discipline, Deliberate Indifference Health, Safety And Well Being, Denial Equal Protection, Cruel And Unusual Punishment Under the Eighth And Fourteenth Amendments; Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin And Wilkins)**

267. The plaintiff incorporates by reference paragraph(s) 1 through 266.

268. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, were grossly negligent in the immediate supervision and discipline of, correctional officer(s) use of, excessive force, sexual abuse, retaliation and harassment, without need, provocation or penological justification, directed at inmates/prisoners such as Plaintiff Marshall for the, use of protected legal activities, and as a means of control and punishment.

269. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, knowingly and willfully, acted in deliberate indifference, directed at inmates/prisoners such as Plaintiff Marshall's immediate health, safety and well being.

270. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, knew or should have known of, correctional officers, propensity, without need, provocation or penological justification to use, excessive force, sexual abuse, retaliation and harassment, directed at inmates/prisoners such as Plaintiff Marshall for the, use of their protected legal activities, and as a means for control and punishment, and complete failure to take corrective actions to immediately curtail such unconstitutional prison living conditions, constituted a denial of equal protection under the law.

271. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, engaged in a willful and continuous pattern of conduct, with the intention to cause, or reckless disregard that it would cause, Plaintiff Marshall to, suffer cruel and unusual punishment as a result of, Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, aforementioned actions.

272. By virtue of the foregoing, Plaintiff Marshall has suffered damages and injuries as identified in ¶ 224.

### NINTH CAUSE OF ACTION

(42 U.S.C. § 1983; Allowance To Continue, Deliberate Indifference, Denial Of Equal Protection, Cruel And Unusual Punishment Under the Eighth And Fourteenth Amendments; Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin And Wilkins)

273. The plaintiff incorporates by reference paragraph(s) 1 through 272.

274. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, allowed to exist, correctional offiecr(s)

(69).

use of, excessive force, sexual abuse, retaliation and harassment, without need, provocation or penological justification, directed at inmates/prisoners such as Plaintiff Marshall for their use of, protected legal activities, and as a means of control and punishment, by promulgating, ratifying and/or allowing to exist, long standing shammed investigatory common customs, practices, policies and procedures upon, which assured, that inmates/prisoners complaints, grievances and/or reports of, excessive force, sexual abuse, retaliation and harassment, by correctional officers, would simply be found as "unsubstantiated" claims.

275. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, acted in a willful manner, with deliberate indifference of, inmates/prisoners such as Plaintiff Marshall's immediate health, safety and well being.

276. Defendants Annucc, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, knew or should have known of, correctional officers, propensity to use, without need, provocation or penological justification, excessive force, sexual abuse, retaliation and harassment, directed at inmates/prisoners such as Plaintiff Marshall for their use of, protected legal activities, and as a means for control and punishment, and complete failure to take corrective action to curtail such unconstitutional prison living conditions, constituted a denial of equal protection under the law.

(70).

277. Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, engaged in a willful and continuous pattern of conduct, with the intention to cause, or reckless disregard of the substantial probability that it would cause, Plaintiff Marshall to, suffer cruel and unusual punishment as a result of, Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, aforementioned actions.

278. By virtue of the foregoing, Plaintiff Marshall has suffered damages and injuries as identified in ¶ 224.

<u>DAMAGES DEMAND</u>

WHEREFORE, Plaintiff Marshall demands judgment against Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin, Wilkins, Melville, Primley, Murphy, Johanemen, Garcia, Germano and Freeman as follows:

a. Granting Plaintiff Marshall a declaration that the wanton, malicious and sadistic acts of Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley, Johanemen, Garcia, Germano and Freeman, described herein violated Plaintiff's rights under the Constitution and laws of the United States, and;

b. Granting Plaintiff Marshall a declaration that the acts and omissions of Defendants Annucci, P. Griffin, Ferro, Fonda, T. Griffin and Wilkins, described herein violates plaintiff's rights under the Constitution and laws of the United States, and;

c. For compensatory damages against individual Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley, Murphy,

c. A preliminary and permanent injunction ordering, that Defendant Annucci, his successors in office, subordinates, employees, agents and/or representatives, are hereby, prohibit in either housing or confining Plaintiff Marshall, at Green Haven Correctional Facility ("**Green Haven C.F.**"), for any purpose(s), and;

d. A preliminary and permanent junction ordering, that Defendants Annucci, Ferro and Fonda, their successors in office, subordinates, employees, agents and/or representatives are hereby, to refer any and/or all future " '**Prison Rape Elimination Act("P.R.E.A.")**' " reports/complaints, by Plaintiff Marshall, against correctional officers/civilian staff, directly to the New York State Police, within " '72' " hours of such reports as made to any NYSDOCCS employee, and;

e. For compensatory damages against, Defendants P. Griffin, T. Griffin, Wilkins, Primley, Murphy, Johanemen, Garcia, Germano and Freeman, jointly and severally of, no less than $850, 000. 00 ("Eight Hundred and Fifty Thousand Dollars"), and;

f. For punitive damages against, Defendants P. Griffin, T. Griffin, Wilkins, Melville, Primley, Murphy, Johanemen, Garcia, Germano and Freeman, jointly and severally of, no less than $5. Million ("Five Million Dollars"), and;

g. For compensatory damages against, Defendants Annucci, Ferro and Fonda, jointly and severally of, no less than $75, 000. 00 ("Seventy-Five Thousand Dollars"), and;

h. For reasonable attorneys' fees, togther with cost and disbursements, pursuant to 42 U.S.C. § 1988; and to the inherent

(72).

powers of this Honorable Court, and;

    i. For pre and post-judgment interest as allowed by law, and;

    j. For such other and further relief as this Court may deem just and proper.

Dated: _July 16th_, 2018
      Napanoch, New York

Respectfully submitted,

STEVEN MARSHALL I.D.#95-A-8248
Plaintiff Pro Se
Eastern NY Correctional Facility
30 Institutional Road, P.O. Box 338
Napanoch, New York 12458-0338

## VERIFICATION

    I, STEVEN MARSHALL, have read the foregoing, Prisoners' Pro Se Civil Rights Complaint, and hereby verify that the matters alleged therein are true, except as to matters alleged to be on information and belief; and as to those matters, I believe them to be true.
    I certify under penalty of perjury that the foregoing is true and correct.

Dated: _July 16th_, 2018
      Napanoch, New York

STEVEN MARSHALL I.D.#95-A-8248
Plaintiff Pro Se

## PLAINTIFF'S CERTIFICATION AND WARNINGS:
    By signing below, I certify to the best of my knowledge, information, and belief that: (1). the Complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2). the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3). the factual contentions have evidentiary support of, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4). the complaint otherwise complies with the requirements of Federal Rules of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious , or for failure to state a claim, I may be denied in forma pauperis status in future cases.

I understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed If I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any change to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result inn the dismissal of my case.

Dated: _July 16th_ , 2018
Napanoch, New York

STEVEN MARSHALL I.D.#95-A-8248
Plaintiff Pro Se
Eastern NY Correctional Facility
30 Institutional Road, Box 338
Napanoch, New York 12458-0338

# PLAINTIFF'S EXHIBIT [A]



**THE LEGAL AID SOCIETY**

Civil Practice
Prisoners' Rights Project
199 Water Street
New York, NY 10038
F (212) 509-8433
(212) 577-3530
www.legal-aid.org

Blaine (Fin) V. Fogg
*President*

Seymour W. James, Jr.
*Attorney-in-Chief*

Adriene L. Holder
*Attorney-in-Charge*
Civil Practice

October 27, 2015

Superintendent
Green Haven Correctional Facility
594 Rt. 216
Box 4000
Stormville, NY 12582-0010

Vernon J. Fonda
Chief of Investigations
Office of Inspector General
New York State Department of Corrections and Community Supervision
Harriman State Campus, Building #2
1220 Washington Avenue
Albany, NY 12226-2050

     Re:    Inmates at Green Haven Correctional Facility

Dear Superintendent and Chief of Investigations/Inspector General :

    We have received communications from five inmates regarding concerns about their treatment, as well as the treatment of other inmates, at Green Haven Correctional Facility. These inmates report loss of privileges and retaliation in the wake of the escape from Clinton Correctional Facility. They report that correctional officers are abusing their power and creating a threatening atmosphere throughout the facility. The information in this letter conveys the substance of their reports to my office.

    They report the inmates at Green Haven are being punished en masse; those housed on C and D block (previously called "honor block") are the ones most affected. They have lost several hours of out of cell time: in the morning, inmates were usually released from 7:30 a.m. to 11:15 a.m., but now only from 9:10 a.m. to 10:25 a.m.; in the afternoon, they were released from 11:40 a.m. to 2:45 p.m., but now only from 1:00 p.m. to 2:25 p.m.; and in the evening, they were released from 4 p.m. to 10 p.m., but now only from 5:30 p.m. to 9:45 p.m. Limiting out of cell time affects those who have programs to attend since they only have time to go straight to their respective programs when they get released; they have lost the necessary time to cook, shower, use the phone, watch TV, iron clothing or do laundry.

    These inmates also report that their mail is being processed untimely. According to Directive 4422, "when, in the course of inspection, printed or photocopied materials are found,

the entire contents of such correspondence may be delayed through the correspondence unit for up to 6 days while the materials are subject to media review guidelines." They report, however, that their newspapers and magazine subscriptions are handed to them two weeks later. Money from packages and visits are also not being timely processed.

Additionally, inmates' personal property is being taking away from them for no apparent reason. For instance, officers confiscated people's Sangean radios and told them that the radios would be destroyed. However, the radios are being kept by correctional officers throughout the facility; in fact, the inmates report that after their radios were taken they would see those radios in the correctional officers' bubble and posts throughout the facility. According to Directive 4913, inmates are allowed one radio valued at maximum $150. There appears to be no reason for the mass seizure of radios – even if there is a new rule (which my office is not aware of) proscribing Sangean radios, the Directive is clear that new restrictions apply on future purchases only; those restrictions should not affect property already owned by an inmate. Other personal property is also being destroyed or confiscated by officers like sneakers and watches.

These inmates also report a tear gas incident on August 3, 2015, following a fight between two inmates in the messhall. They report everyone, approximately 300 inmates, went out the messhall to the nearest yard, their eyes and skin burning, where they were told to stand with their hands on the wall for about one hour before COs made them strip to their underwear and go under the outdoor showers. Once they were done, they were ordered to leave all their clothing and property, including watches, books, belts, wallets, kufi, yarmulkes, address books, eyeglasses, and legal documents, all of which were reportedly destroyed by the officers. A fight between two inmates should not require a large-scale use of chemical agents and is certainly not an excuse to destroy everyone's property.

Many inmates tell us that they do not want to file grievances for fear of retaliation. They are being told that the more grievances they file, the more privileges would be taken away from them.

Please investigate these complaints and ensure that the privileges earned by the inmates housed on honor blocks are reinstated. Please also ensure that DOCCS rules about inmates property are being followed and that their property is not being arbitrarily destroyed.

Thank you for your consideration of this matter. I look forward to hearing from you.

Sincerely,

Sarah Abdelmessih
*Volunteer Attorney*

# PLAINTIFF'S EXHIBIT [B]



THE ASSEMBLY
STATE OF NEW YORK
ALBANY

CHAIR
Committee on Correction
Codes Subcommittee on
Criminal Procedure

COMMITTEES
Codes
Education
Environmental Conservation
Tourism, Parks, Arts and
Sports Development

DANIEL O'DONNELL
Member of Assembly
69ᵗʰ Assembly District

January 22, 2016

Honorable Anthony Annucci,
Acting Commissioner
NYS Department of Corrections and Community Supervision
1220 Washington Avenue
Harriman Campus, Building 2
Albany, New York 12226

Re: Green Haven Correctional Facility

Dear Commissioner Annucci,

I have received a significant number of letters from inmates at Green Haven Correctional Facility conveying details of brutality against inmates that have allegedly occurred since Superintendent Thomas Griffin and his new executive team were appointed. The letters also complain about a reduction in program services since the new administration arrived.

The letters I have received indicate that the entire administration at Green Haven was replaced in 2015 after two cell phones and three portable DVD players were introduced by facility personnel, including an officer who was apparently arrested for his role in facilitating the introduction of such contraband and its transfer to inmates. A lockdown commenced, with a CERT team called in to conduct a search. Inmates allege that personal property and legal papers were damaged or destroyed and that a number of inmates were assaulted in the course of the search. On June 12, 2015, three additional iPhones were found, resulting in another lockdown, CERT team search, and similar damage and assaults against inmates.

Brutality and Retaliation

One inmate wrote that there have been over forty assaults by officers on inmates since Superintendent Griffin has arrived. He pointed out that most of these inmates have significant injuries that require stitches and sometimes outside hospitalization. Another inmate stated he needed two surgeries for orbital bone reconstruction after suffering multiple facial bone fractures and a host of other injuries that occurred when he was assaulted by members of the CERT team. The inmate also appears to have permanent damage to his vision. Yet another inmate described being assaulted by an officer during a pat frisk in which the officer made a deliberate, swift upward motion of his arm into the inmate's testicles, resulting in blood in his urine for which he has been refused treatment by a specialist.

Inmates write of being threatened by staff for attempting to file grievances and point out that the few grievances that are filed are investigated by colleagues of the officers being grieved. Apparently, any inmate filing a grievance against an officer frequently receives a misbehavior

report, which is issued by the same officer who was the subject of the grievance. It is my sincere hope that you track such occurrences, so that officers who retaliate against inmates for filing grievances can be identified and disciplined for their unprofessional behavior.

Another inmate reported that in attempts to cover up staff abuse against inmates correctional officers have placed at least 50 inmates in SHU for allegedly assaulting staff. He also stated that due to the violence at Green Haven, members of the Special Investigation unit from Albany have been visiting the facility almost every day for the past five months in response to inmate complaints and grievances. However, according to him, these efforts have led nowhere.

In another correspondence, an inmate wrote that a former correctional officer named Corbin was terminated after being involved in the deaths of at least three inmates. If you can, please verify this accusation and provide me with details. While I am glad that a bad officer may have been terminated, it is appalling that any officer working for the state should harm inmates in her or his custody.

Many letters I received regarding Green Haven speak of provocation and retaliation. Guards routinely using profanity while giving instructions, poking inmates in the back with batons, "burning" inmates by leaving them in their cells without food or recreation for 15-24 hours to make it clear who is in charge, using batons against inmates' necks, leaving inmates handcuffed behind their backs and naked in cold rooms, and intimidating inmate witnesses to assaults by officers to discourage such witnesses from testifying against the officers. These practices, if true, are unacceptable, violate the civil and human rights of prisoners, and must be stopped.

Programs
There were also many complaints about program services, including the cancellation of the Alternatives to Violence Programs (AVP) workshops for nearly eight months. Please provide me with information about any programs, including volunteer programs, which have been suspended or cancelled in the last year.

Honor Block
One letter complained that Superintendent Griffin's first act was to dismantle the honor block at C block by changing its name, transferring twenty-four inmates out of the block after which each transferred inmate received a false misbehavior report, and removing virtually all privileges associated with honor block. I strongly support the use of honor block as an incentive and reward for good behavior and am dismayed that a superintendent might disrupt the effectiveness of such a unit. Another inmate wrote that Superintendent Griffin terminated all C block porters but one and ordered all televisions removed because the block was not cleaned appropriately. A different inmate complained that the inmates in the honor block at D block are only allowed to use the shower and the kitchen one at a time, even though both facilities are equipped to be used by multiple users. A memorandum from Lieutenant M. Tokarz, dated 9/14/15, describing a number of changes to C and D blocks was provided to me as proof of several such changes. Please advise me as to what changes have been made in the past year in the C and D blocks and the honor blocks' current status.

*Mr. Annucci*
*January 22, 2016*
*Page 3 of 3*

<u>Medical</u>
An inmate alleged that upon Superintendent's arrival the medical department was ordered to make wholesale changes, reductions and/or eliminations of medications prescribed to inmates, and pointed to seven civil claims as the result. Please advise me as to the nature and extent of these changes.

<u>Missing Radios</u>
Another inmate wrote that Superintendent Griffin ordered the seizure of some hundreds of Sangean radios shortly after the Clinton.

Thank you for your attention into these very serious matters.  I look forward to your response.

       Very truly yours,

       Daniel O'Donnell, Chair
       Assembly Standing Committee on Correction

DOD/ta

Mr. Steven Marshall I.D.#95-A-8248
Eastern NY Correctional Facility
Box 338
Napanoch, New York 12458-0338

EASTERN

NEOPOST
07/20/2018
US POSTAGE  $003.70⁰

RECEIVED
SDNY DOCKET UNIT

2018 JUL 24  PM 1:37

CORRECTIONAL FACILITY

ZIP 12458
041M11284860



RECEIVED

JUL 24 2018

CLERK'S OFFICE
S.D.N.Y.

Pro Se x

Clerk's Office
United States District Court
Southern District of New York
The Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

USM P3
SDNY

PRIVILEGED LEGAL MAIL